## ANDREW HREN v. CRETE MINING COMPANY.[1]

November 4, 1927.

No. 26,187.

**Evidence sustained verdict for flooding plaintiff's premises.**

1. Evidence examined and *held* sufficient to sustain a finding that the defendant, in operating its mine, pumped water into a runway in such large quantities as to inundate and greatly damage plaintiff's premises and his personal property thereon.

**Charge to jury.**

2. There was no error in the charge to the jury.

**Verdict for $862.50 not excessive.**

3. The verdict is not excessive.

Waters, 40 Cyc. p. 654 n. 84, 91.

[1]Reported in 215 N. W. 853.

Defendant appealed from an order of the district court for St. Louis county, Freeman, J., denying its alternative motion for judgment or a new trial. Affirmed.

*Naughtin & Henley,* for appellant.

*Gannon, Strizich & Farnand,* for respondent.

QUINN, J.

Action to recover damages for the flooding of plaintiff's property with foul and noxious waters. There was a verdict for plaintiff. From an order denying its alternative motion for judgment or for a new trial, defendant appealed.

Plaintiff owns several lots in block 16, village of Kitzville, upon which he resides with his family. About two miles in a northerly direction therefrom is the Albany Mine, which defendant has maintained and operated ever since 1902. In connection therewith is a shaft and pump which throws water at the rate of 1,000 gallons per minute.

The village was platted on one 40. There is a slope from north to south across this 40 of approximately 30 feet. A natural swale or creek extends from the mine to the northwest corner of the village, thence southerly across the 40, thence easterly to within about 500 feet of plaintiff's premises, where the surface is flat and low. Near this creek, between the mine and the 40, are a dozen or more residences which the defendant maintains for its employes and which have sewerage connections with the creek. The pump at the mine, when in operation, casts water into the creek at the rate of approximately 1,000 gallons per minute. This water wends its way down the creek and ultimately onto plaintiff's premises.

It is contended on behalf of the plaintiff that he sustained damages as the result of the pumping of such large quantities of water into such creek, and through its discharging the same so near plaintiff's premises and allowing it to flow in such destructive quantities as to inundate and greatly damage the same, including his personal property thereon.

It is further contended on behalf of plaintiff that during the winter months, when the outlet is blocked by ice and snow and the de-

fendant is pumping, the water and ice form and impound upon his premises so as to render the same untenantable and unfit for occupancy and that sewage from the buildings referred to is cast upon plaintiff's premises through such creek in question and, as the water subsides in the summer, it leaves the premises in a noxious condition and injurious to health. There is evidence in the record sufficient to sustain a finding that these contentions are true.

While the appellant denies that it ever at any time changed the course of the water flowing in such creek, and claims that in order to operate such mine it is necessary to pump water from it into this creek, there being no other way of disposing of it, yet there is evidence that the water pumped from such mine so increased the volume passing through the creek as to overflow respondent's premises and cause the damages complained of. The evidence made an issue of fact for the jury and was such as to justify the verdict [$862.50]. Bohrer v. Village of Inver Grove, 166 Minn. 336, 207 N. W. 721.

We find no error in the charge to the jury under the allegations contained in the complaint and the manner in which the cause was tried without objection. It was claimed throughout the trial that the amount of water pumped from the mine into the creek was the proximate cause of the overflowing of respondent's premises and injury thereto. The evidence made this a question for the jury.

Affirmed.